# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ENTERED
JAN 14 2005
U.S. DISTRICT COURT
CLARKSBURG, WV 26301

PETER J. ESPOSITO, JR.,

Petitioner,

v.  CIVIL ACTION NO. 1:04CV138

JOHN ASHCROFT, et. al.

Respondents.

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

On June 28, 2004, the *pro se* petitioner, an inmate at FCI-Morgantown, Morgantown, West Virginia, filed an Application for Habeas Corpus Pursuant to 28 U.S.C. §2241 in which he challenges the policy of the Bureau of Prisons ["BOP"] regarding halfway house/community corrections placement and asserts that the BOP has incorrectly calculated his good conduct time credit ["GCT"].

This matter, which is pending before me for Report and Recommendation pursuant to LR PL P 83.09, is ripe for review. As discussed below, the undersigned recommends that the petitioner's §2241 petition be denied.

### II. FACTS and CONTENTIONS

In June 2003, the petitioner was sentenced in the United States District Court for the Northern District of Ohio to 24 months imprisonment for "improperly licensed/securities, tax charges."

The petitioner asserts that the BOP has erroneously calculated his GCT time at 47 days per year instead of 54 days per year and that the BOP owes him 14 days of GCT.

The petitioner also asserts that under the BOP's new 10% policy he is receiving only 2.4 months in a halfway house when he should receive 6 months in a halfway house. He further asserts that he did not exhaust his administrative remedies because he does not have time to do so. However, he states that he filed an emergency appeal.

The petitioner requests that the be credited for another 14 days of GCT and that he receive an additional 3.6 months is a CCC.

### III. ANALYSIS

#### A. Good Conduct Time Issue

##### 1. Exhaustion

The petitioner has not exhausted his administrative remedies. Nonetheless, other courts have already found that requiring inmates to challenge the BOP's policy regarding calculation of GCT through the administrative process would be futile. See, e.g., Hendershot v. Scibana, 2004 WL 2009241 (W.D.Wis. 2004) and Martinez v. Wendt, 2003 WL 22456808 (N.D.Tex.2003) (Mag. Report and Recommendation), adopted by 2003 WL 22724755 (N.D.Tex.2003). Thus, the undersigned finds that futility excuses the petitioner's failure to exhaust his administrative remedies.

##### 2. The Bureau of Prisons Properly Calculated the Petitioner's Good Time Credit.

18 U.S.C. §3624(b) delegates to the BOP the authority to award and calculate good time credits. This section provides as follows:

(b) Credit toward service of sentence for satisfactory behavior.

(1) Subject to paragraph (2), a prisoner who is serving a *term of imprisonment* of more than 1 year other than a *term of imprisonment* for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time

served, of up to 54 days at the end of each year of the prisoner's *term of imprisonment*, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations. Subject to paragraph (2), if the Bureau determines that, during that year, the prisoner has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of the prisoner's sentence or shall receive such lesser credit as the Bureau determines to be appropriate. In awarding credit under this section, the Bureau shall consider whether the prisoner, during the relevant period, has earned, or is making satisfactory progress toward earning, a high school diploma or an equivalent degree. Credit that has not been earned may not later be granted. Subject to paragraph (2), credit for the last year or portion of a year of the *term of imprisonment* shall be prorated and credited within the last six weeks of the sentence.

(2) Notwithstanding any other law, credit awarded under this subsection after the date of enactment of the Prison Litigation Reform Act shall vest on the date the prisoner is released from custody.

(3) The Attorney General shall ensure that the Bureau of Prisons has in effect an optional General Educational Development program for inmates who have not earned a high school diploma or its equivalent.

(4) Exemptions to the General Educational Development requirement may be made as deemed appropriate by the Director of the Federal Bureau of Prisons.

18 U.S.C. §3624(b) (emphasis added).

The BOP has interpreted the statute as directing the BOP to award inmates 54 days of good time credit for each year served and to prorate the amount of GCT for the last partial year. See 28 C.F.R. §523.20. The formula used by the BOP to determine good time credits is set forth in the Bureau of Prisons Program Statement 5880.28, Sentence Computation Manual CCCA.

Only a few courts have addressed the issue as hand. The Fourth Circuit has not addressed the issue, but the Sixth, Seventh and Ninth Circuits, have affirmed the manner in which the BOP calculates good conduct time. See White v. Scibana, 390 F. 3d 997( 7th Cir. 2004); Brown v. Hemingway, 53 Fed. Appx. 338, 2002 WL 3185147 (6th Cir. 2002); Williams v. Lammana, 2001 WL 11306069 (6th Cir. 2001); Pacheco-Camacho v. Hood, 272 F. 3d 1266 (9th Cir. 2001), cert. denied, 535 U.S.1105 (2002); Also, district courts have weighed in on this issue. See e.g., Pasciuti v. Drew, 2004 WL 1247813 (N.D. N.Y. 2004); Graves v. Bledsoe, 334 F. Supp. 2d 906 (W.D. Va.

2004); and Martinez v. Wendt, 2003 WL 22456808 (N.D. TX 2003)(Mag. Report and Recommendation) adopted by the district court, 2003 WL 22724755 (N.D. Tex. 2003).

In White, supra, the court focused on the phrase "term of imprisonment" and stated as follows:

> if "term of imprisonment" refers to the sentence imposed, it becomes impossible to award the credit based on an annual year-end assessment of the prisoner's behavior. And such retrospective annual assessment and award of credit appears to be at the core of what the good-time statute is all about. To interpret "term of imprisonment" as "sentence imposed" for purposes of awarding good-time credit would entitle an inmate to receive credit for good conduct in prison for time-perhaps several years of time - that he was not in prison.

The Seventh Circuit concluded that the phrase "term of imprisonment" is ambiguous and deferred to the BOP's reasonable interpretation of the statute.

In Brown, supra, the petitioner argued that he should receive GCT in the amount of 15% of his sentence. The Sixth Circuit found that the BOP follows 18 U.S.C. §3624(b)(1) by granting 54 days of credit for each year actually served and that the statute makes no reference to a 15% figure. Thus, the Sixth Circuit found that the BOP's interpretation of §3624(b) was reasonable. In Williams v. Lammana, supra, the petitioner alleged that the phrase "may receive credit toward the service of [his] sentence, beyond the time served" contained in §3624(b) should be interpreted as allowing him to receive good time credits based on the sentence imposed instead of the actual time of incarceration. The Sixth Circuit found that "[t]he statute clearly states that good conduct time is awarded on the time served by the inmate, not on the time that might potentially be served by the inmate." Id. at 361. Thus, the Sixth Circuit found that the BOP had properly calculated GCT.

In Pacheco-Camacho, supra, the petitioner alleged that the BOP's regulations allowed him to receive only 47 days of GCT instead of 54 days. The Ninth Circuit found that the phrase "term of imprisonment" in §3624(b) is ambiguous and looked at the legislative history which according

to the Ninth Circuit lent "additional support to the BOP's regulation." The Ninth Circuit found that the BOP's interpretation of §3624(b) was reasonable and entitled to deference as required by Chevron U.S.A. Inc., v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984). The court further found that a sentence imposed interpretation of the phrase "term of imprisonment" would be inconsistent with the requirement to prorate good time credits during the last year of the term and would give the prisoner a windfall in his last year. Lastly, the Ninth Circuit found that the rule of lenity did not apply because the BOP has resolved the ambiguity in §3624(b) through its reasonable interpretation of the statute. Id. at 1272.

In Pasciuti v. Drew, 2004 WL 1247813 (N.D. N.Y. 2004), the Northern District of New York found §3624(b) to be ambiguous because it is unclear "what amount of time should be used as the standard for prorating." However, the court found that the BOP's interpretation was reasonable because the statute states that the credit is to be given "at the end of each year of the prisoner's term of imprisonment." The court determined that "if GCT was awarded based on the term of imprisonment imposed by a sentencing judge, an inmate may be awarded GCT for years on his initial sentence that he is not required to serve." Id. at *5.

Likewise, in Graves v. Bledsoe, 334 F. Supp. 2d 906 (W.D. Va. 2004), the Western District of Virginia found the language of §3624 to be ambiguous and the BOP's interpretation of the statute to be logical and reasonable. The court further stated that the White decision "goes against common sense and the reasoning of the majority of courts that have addressed this issue." Id. at *2; see also, Martinez v. Wendt, 2003 WL 22456808 (N.D. TX 2003)(Mag. Report and Recommendation) adopted by the district court, 2003 WL 22724755 (N.D. Tex. 2003) (§3624(b) is ambiguous, the BOP's interpretation of the statute is reasonable and the rule of lenity does not apply because §3624(b) is not a penal statute).

The undersigned agrees with the other courts which have addressed the issue regarding calculation of GCT that §3624(b) is ambiguous and that the BOP has properly interpreted the statute. In finding that the statute is ambiguous, the undersigned has utilized the canons of statutory construction.

With regard to statutory construction, the court must first determine "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron U.S.A. v. Natural Res. Def. Council, 467 U.S. 837, 842-43 (1984).

In interpreting a statute, courts do not construe the meaning of statutory terms in a vacuum; instead the words are interpreted "in their context and with a view to their place in the overall statutory scheme." Davis v. Michigan Dept. of Treasury, 489 U.S. 803, 809 (1989); Tyler v. Cain, 533 U.S. 656, 662 (2001). Further, "identical words used in different parts of the same act are intended to have the same meaning." Sorenson v. Secretary of Treasury, 475 U.S. 851, 860 (1986)(quoting Helvering v. Stockholms Enskilda Bank, 293 U.S. 84, 87 (1934)). However, if the language in the statute is not clear, courts may resort to the legislative history to ascertain the meaning of the language. Consumer Product Safety Commission v. GTE Sylvania, Inc., 447 U.S. 102 (1980).

The phrase which causes problems in §3624(b) is "term of imprisonment" because it is unclear whether the phrase means sentence imposed or time served. Clearly, the first two times of phrase is used in §3624(b), the phrase means sentenced imposed. However, when the phrase is used the third time- "54 days at the end of each year of the prisoner's term of imprisonment"- the phrase is ambiguous. Thus, §3624(b) is ambiguous with regard to phrase "term of imprisonment."

Even looking at how the phrase "term of imprisonment" is used in §3624(a)[1] and finding that "term of imprisonment" means sentence imposed in §3624(a), such does not clarify the ambiguity because §3624(b) must be read in its entirety. The other portions of the statute provided that GCT is to be awarded at the end of each year of the prisoner's term of imprisonment and that "credit for the last year or portion of a year of the *term of imprisonment* shall be prorated and credited within the last six weeks of the sentence." Using a "sentence imposed" interpretation with regard to these clauses is not logical. Thus, the ambiguity remains.

Therefore, the undersigned has examined the legislative history to determine the meaning of the statute. Continuing Appropriations, 1985 - - Comprehensive Crime Control Act of 1984 Sen. Rep. No. 98-225 (1984), reprinted in 1984 U.S.C.C.A.C. 312, 3329-30 provides that the changes made to §3624(b) in 1984 were to simplify the calculation of good time benefits and to decrease the prisoner's uncertainty about his release date. The prior law provided a different rate of good time credit for different lengths of sentences and gave prison officials the discretion to withhold or restore credits depending on the inmate's subsequent behavior. While Congress may have intended the new system to be simpler for calculating GCT, Congress did not set forth how the GCT was to be calculated. Moreover, Congress added the language that GCT was to be awarded at the end of each year of the prisoner's term of imprisonment.

The Ninth Circuit provided additional insight regarding the Comprehensive Crime Control Act of 1984:

---

[1] 18 U.S.C. §3624(a) provides as follows:
(a) Date of release.--A prisoner shall be released by the Bureau of Prisons on the date of the expiration of the prisoner" term of imprisonment, less any time credited toward the service of the prisoner's sentence as provided in subsection (b). If the date for a prisoner's release falls on a Saturday, a Sunday, or a legal holiday at the place of confinement, the prisoner may be released by the Bureau on the last preceding weekday.

> While Congress intended the new system to be simpler than that under the previous law, it did not eliminate the proration of good time credits during the last year of the sentence. If Congress's sole goal had been simplicity, it could have chosen not to award any good time credits during the last year of imprisonment (as it does for sentences of a year or less), or to award the full fifty-four days regardless of whether or not the prisoner serves the full year in prison. Instead, Congress chose to tolerate the additional complexity in order to arrive at a more equitable result. Far from mandating Pacheco's interpretation, congressional desire to strike a balance between simplicity and fairness, as evidenced by legislative history, lends additional support to the BOP's regulation.

Pacheco, 272 F. 3d at 1269-70.

Thus, the reasoning behind the Comprehensive Crime Control Act of 1984 does not clarify the ambiguity.

Therefore, the undersigned finds that after reviewing the legislative history, Congress's intent regarding the phrase "term of imprisonment" is ambiguous. Therefore, the Court must now determine "whether the agency's answer is based on a permissible construction of the statute. Chevron, 467 U.S. at 843. "If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." Id. at 844. "When a challenge to an agency construction of a statutory provision, fairly conceptualized, really centers on the wisdom of the agency's policy, rather than whether it is a reasonable choice within a gap left open by Congress, the challenge must fail." Id. at 866.

The BOP's method of calculating the good time credits applies the statute as it is written and is entitled to deference. While the phrase "term of imprisonment" is ambiguous, the overall directive of Congress is clear, i.e, good time credit is to be calculated on the basis of time served instead of sentence imposed because §3624(b) requires the BOP to award credit only "at the *end of each year*

of his term of imprisonment." (emphasis added). If a prisoner were awarded GCT based on the sentence imposed, he may be given GCT for years he is not required to serve. Thus, the undersigned agrees with the majority of courts which have addressed this issue that the BOP is properly calculating GCT based on time served instead of sentence imposed.

Lastly, the undersigned finds that the rule of lenity does not apply. "[A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." United States v. Bass, 404 U.S. 336, 347 (1971). The rule of lenity also applies in the civil context where an ambiguous statute had some criminal applications. See e.g., United States v. Thompson/Center Arms Co., 504 U.S. 505 (1992). "The rule of lenity applies only if 'after seizing everything from which aid can be derived, we can make 'no more than a guess as to what Congress intended.'" Reno v. Koray, 515 U.S. 50, 65 (1995)(internal citation omitted). The Supreme Court has noted that the rule of lenity "cannot dictate an implausible interpretation of a statute, nor one at odds with the generally accepted contemporary meaning of a term." Taylor v. United States, 495 U.S. 575, 596 (1990). The undersigned agrees with the succinct statement of the Pasciuti Court, set forth below, that the rule of lenity does not apply:

> Because inconsistencies would arise if "term of imprisonment" were read as "sentence", Congress could only have intended the phrase to be used to mean years that an inmate is actually imprisoned. Therefore, while there is ambiguity stemming from the meaning of one phrase in the statute, when viewed in its entirety, § 3624(b) is not ambiguous and the rule of lenity does not apply.

Pasciuti v. Drew, 2004 WL 1247813, *6 (N.D.N.Y.).

**B. Community Confinement Issue**

Prior to December 2002, the BOP had a policy of placing prisoners in halfway houses for up to the last 6 months of their sentences, notwithstanding the length of their sentences. See BOP Program Statement 7310.04. However, the BOP's policy changed as a result of an opinion from the

U.S. Department of Justice's Office of Legal Counsel ["OLC"]. On December 13, 2002, the OLC issued a memorandum opinion regarding "Bureau of Prisons practice of placing in community confinement offenders who have received sentences of imprisonment." The memorandum provided that the BOP's long-standing practice of following judicial recommendations and designating certain offenders directly to community corrections centers ["CCCs"] was unlawful. While the OLC opinion noted that §3621(b) provides the BOP with the authority to choose a prisoner's place of imprisonment, the OLC determined, based on cases regarding U.S.S.G. §5C1.1, that confinement in a CCC is not imprisonment. Thus, the OLC determined that §3621(b) does not provide the BOP with authority to place a prisoner in a CCC. The OLC memorandum also provided in relevant part as follows:

> Your office has advised us that BOP, in exercising its authority under section 3624(c), has sometimes not abided by the time limitation set forth in that section. The authority conferred under section 3624(c) to transfer a prisoner to a non-prison site is clearly limited to a period "not to exceed six months, of the last 10 per centum of the time to be served," 18 U.S.C. §3624, and we see no basis for disregarding this time limitation.

[OLC Memorandum, p. 7, n.6].

As a result of the December 13, 2002 OLC memorandum, the BOP's current policy is that inmates may be sent to a halfway house during the last ten percent of their sentence, not to exceed six months."

### 1. Exhaustion

Federal inmates are required to exhaust their administrative remedies prior to filing a §2241 petition. See, e.g., Martinez v. Roberts, 804 F.2d 570 (9th Cir. 1996); Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3d Cir. 1996); Colton v. Ashcroft, 299 F. Supp. 2d 681 (E.D. Ky 2004).

In order for a federal prisoner to exhaust his administrative remedies, he must comply with

28 C.F.R. §542. In <u>Gibbs v. Bureau of Prison Office, FCI</u>, 986 F.Supp. 941, 943-44 (D.Md. 1997), the court explained that 28 C.F.R. § 542 mandates a four-step administrative process beginning with attempted informal resolution with prison staff. If the prisoner achieves no satisfaction informally, he must file a written complaint with the warden, followed by an appeal to the regional director of the Federal Bureau of Prisons. Finally, if the prisoner has received no satisfaction, he may appeal to the Office of the General Counsel. <u>Id.</u>

While the petitioner did not exhaust his administrative remedies regarding this issue, a number of courts have already found that requiring inmates to challenge the BOP's new policy regarding placement in a CCC through the administrative process would be futile. See, e.g., <u>Fagiolo v. Smith</u>, 326 F. Supp. 2d 589, 590 (M.D. Pa. 2004)("exhaustion would be futile because the BOP has adopted a clear and inflexible policy regarding its interpretation of 18 U.S.C. §3624(c)"); <u>Zucker v. Meinfee</u>, 2004 WL 102779 (S.D. N.Y. Jan. 21, 2004)("[G]iven the subordinate relation of the highest level of administrative appeal to the source of the interpretation at issue in this case" the petitioner's failure to exhaust was excused as being futile). Thus, the undersigned finds that futility excuses exhaustion.

### 2. BOP's New Interpretation of 18 U.S.C. §3624(c) is Not Contrary to the Plain Meaning of §3624(c)

Two statutes are pertinent in this case - 18 U.S.C. §3621(b) and §3624(c). Section 3621(b) provides as follows:

> **(b) Place of imprisonment.**--The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering-

**(1)** the resources of the facility contemplated;

**(2)** the nature and circumstances of the offense;

**(3)** the history and characteristics of the prisoner;

**(4)** any statement by the court that imposed the sentence--

**(A)** concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

**(B)** recommending a type of penal or correctional facility as appropriate; and

**(5)** any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another. The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse.

18 U.S.C. §3624(c) provides as follows:

**(c) Pre-release custody**

The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody

The petitioner asserts that the BOP is misconstruing §3624(c) in limiting time in a CCC for the last 10% of a prisoner's sentence not to exceed 6 months. The Fourth Circuit has not addressed this issue. In fact, only the First, Seventh and Eighth Circuit Courts of Appeals have reviewed the issue of whether the BOP's new policy misconstrues §3624(c) but several district courts have

addressed the issue.

### a. Court of Appeals Rulings

As previously noted, the Seventh Circuit avoided the issue of whether the BOP's 10% policy misconstrues §§3621(b) and 3624(c) by finding that such issue was not proper for a §2241 proceeding. Richmond, supra. The First Circuit Court of Appeals found in Goldings v. Winn, 383 F. 3d 17 (1st Cir. 2004)[2] that §3621(b) is unambiguous, and, on its face, permits the BOP to direct an inmate's transfer to a CCC prior to the last ten percent of his prison term. Id. at 22. The court also found that the phrase "any time" does not mean "'only for the lesser of the last six months or ten percent of a prisoner's term of imprisonment." Id. at 23.[3]

The court further determined that "while 3624(c) clearly limits the BOP's discretion *not* to consider community confinement or other pre-release alternatives at the end of the prisoner's prison term, it does not prohibit the BOP from doing so earlier pursuant to a different grant of discretionary authority." Id. at 24. The First Circuit concluded that "§3624(c) does not prohibit the BOP from transferring prisoners to a CCC prior to the lesser of six months or ten percent of the end of their prison terms." Id. Instead, "§3624(c) limits the BOP's *obligation* to assure that a prisoner spends the last part of his sentence under pre-release conditions, whether in a CCC or elsewhere. It does

---

[2] In Goldings, the prisoner filed a complaint in which he alleged that the new BOP policy was incorrect as a matter of statutory interpretation, was established in violation of the notice and comment requirements of the APA, and violated the Ex Post Facto clause and the due process clause. The prisoner sought declaratory and injunctive relief enjoining the defendants from applying the new policy to him. The defendants argued that §3621(b) does not apply to CCC placements because a CCC is not a place of imprisonment and that §3621(b) "'cannot be squared with the plain meaning of §3624(c) and elementary rules of statutory construction' because it would 'effectively render §3624(c) a nullity.'" Id. at 26.

[3] The district court concluded that §3621(b) is implicated only by assignments to a CCC at the beginning of a prisoner's sentence and that transfers at the end of a sentence are governed by §3624(c).

not limit the agency's *discretionary authority* to place a prisoner in a CCC at any other time during the prisoner's sentence." Id. at 26 (emphasis added). The court further noted that "if, as both parties agree, a CCC may be a place of imprisonment during the last ten percent of a prisoner's term of imprisonment, it would be incongruous to conclude that the same CCC may not be a place of imprisonment during any portion of the first ninety percent of that term." Id. at 27.

In Elwood v. Jeter, 386 F. 3d 842 (8th Cir. 2004),[4] the Eighth Circuit determined that "[t]o adopt the government's view that the section merely limits the more general grant of authority in 18 U.S.C. §3621(b) would be to ignore the obligatory nature of the word 'shall.'" Id. However, the court noted that "§3624(c) does not require placement in a CCC. It only obligates the BOP to facilitate the prisoner's transition from the prison system. Under §3621(b), the BOP may place a prisoner in a CCC for six months, or more. Under §3624(c) the BOP must formulate a plan of pre-release conditions.... Likewise, the obligation is qualified by the phrase 'to the extent practicable.'" Id. at 847. Because the court granted relief on the petitioner's statutory argument it did not address the APA or Ex Post Facto claims.

However, Judge Riley stated in his dissent that "any inconsistency between sections 3621(b) and 3624(c) can be reconciled by applying two canons of statutory construction. The first canon mandates specific statutory provisions govern over more general provisions." Id. (quoting Variety Corp. v. Howe, 516 U.S. 489, 511 (1996)). The second cannon is that "courts must be 'reluctant[t]

---

[4]The petitioner alleged that the BOP's policy was an erroneous interpretation of 18 U.S.C. §3621(b) and §3624(c); that the policy violates the APA because it was not published and made available for public comment, and the policy violates the Ex Post Facto Clause. The Government argued that §3624(c) limits the general authority granted in §3621(b) and is not an affirmative duty to place inmates in CCCs for the conclusion of their time of incarceration. Thus, the Government argued that the BOP may transfer an inmate to a CCC only during the last ten percent of the inmate's term, and not to exceed six months.

to treat statutory terms as surplusage.'" Id. at 848 (quoting Babbitt v. Sweet Home Chapter, Cmtys for Great Ore., 515 U.S. 687, 698 (1995).The dissent opined that "[b]y reading the two sections together to permit the BOP to begin to transition inmates at any time during their imprisonment, the majority eviscerates both the specific limitations set forth in section 3624(c) and Congress's express intention to limit the amount of time permitted for CCC placement at the conclusion of an inmate's term." Id. Thus, the dissent concluded as follows:

> Under section 3621(b), therefore, the BOP generally may place an inmate in any penal or correctional facility at any time, subject, however, to the specific time limitations set forth in section 3624(c). Without rendering meaningless any terms in either statute, this interpretation utilizes the language contained in both statutes, and specifically gives life to section 3624(c)'s limitations on placements in transitional facilities at the end of the inmate's term. Such an interpretation further complies with the canon, "the specific governs the general." Conversely, the majority opinion's interpretation ignores the limitations "not to exceed six months" and "of the last 10 per centum," rendering the terms mere "surplusage" in violation of both canons of statutory construction.

Id.

### b. Rulings from District Courts

The undersigned found no cases on Westlaw from district courts in the Fourth Circuit regarding the backend placement of a prisoner into a CCC. However, the District of Maryland has addressed a companion issue regarding direct placement. See Kiley v. Federal Bureau of Prisons, 333 F. Supp. 2d 406, 413, n. 15 (D. Md. 2004)("Section 3621(b) grants the BOP the discretion to designate prisoners to a CCC at the outset of their terms, while §3624(c) mandates that the BOP move prisoners to a CCC or home confinement near the end of their terms.").

Additionally, the district courts which have addressed this issue are split. Examples of some those cases are set forth below.

### i. BOP's Policy is Valid

The district courts which have ruled that the BOP 10% policy is valid have determined that a CCC is not a place of imprisonment, and they have also found that §3624(c) limits the BOP's discretion under §3621(b). See Galizia v. Federal Bureau of Prisons, 2004 WL 1900350 (S.D. N.Y. 2004); Skelskey v. Deboo, 332 F. Supp. 2d 485 (D. Conn. 2004);[5] Cohn v. Federal Bureau of Prisons, 302 F. Supp. 2d 267 (S.D. N.Y. 2004)(to hold that the specific language of §3624(c) does not limit the BOP's discretion under §3621 would violated the principles of statutory construction).

### ii. BOP's Policy is Invalid

Courts that have determined that the BOP's policy is invalid have found that a CCC is a place of imprisonment and that §3621(b) allows the BOP to designate inmates to any suitable correctional facility and such authority is not limited by §3624(c). See, Schoenfeld v. Menifee, 2004 WL 1516797 (S.D. N.Y.); Terry v. Menifee, 2004 WL 2434978 (S.D. N.Y. 2004)(Section 3621(b) "gives the BOP broad discretion to place prisoners wherever it deems appropriate; [section 3624(c) does not so much limit as focus that discretion, and then *only* during the lesser of the last 10 percent or six months of a sentence, and only so as to assure that a pre-release plan is implemented "to the extent practicable"); Serafini v. Dodrill, 325 F. Supp. 2d 535, 539 (M.D. Pa 2004)(" there is nothing in the statutory scheme that supports an inference that Congress did not intend to authorize CCC placement in other contexts or for more than 10% of a prison term. Had Congress intended otherwise, it would not have delegated to the BOP the authority to place an inmate in any appropriate corrections facility.").

---

[5] However, in United States v. Mestel, 2004 WL 2472273 (D. Conn. 2004), the court relied on Goldings and found that the BOP's new policy is based on erroneous statutory construction.

The District of New Jersey also found that the BOP's 10% policy is invalid, but approached the issue differently than other courts. In Scott v. Federal Bureau of Prisons, 317 F. Supp. 2d 529 (D. N.J. 2004), the District of New Jersey noted that §3624 does not refer to community confinement, CCCs or a penal or correctional facility. The court further stated as follows:

> It is clear to this Court that § 3621(b) and § 3624(c) are easily harmonized. Section 3624(c) allows the BOP to implement a form of custody at the end of a prisoner's sentence which does not amount to custody in a "penal or correctional facility" as provided in § 3621(b). The OLC Memo is correct when it states that there is no authority under § 3624(c) for this reduced form of custody to exceed 10% of a prisoner's sentence.
>
> Where the OLC memo goes astray is by assuming, first, that the term "Community Corrections Center" in BOP PS is the same as "community confinement" in U.S.S.G. § 5F1.1, and then by leaping to the conclusion that no CCC could be a "penal or correctional facility." BOP PS clearly states at p. 4 that a CCC meets the definition of "penal and correctional facility." There is nothing in this record or in the OLC Memo or elsewhere which suggests that this conclusion is in error. It is quite clear that the concept of "community confinement" as used in the Guidelines is a far broader concept than that of a CCC used in BOP PS. For instance, the "Community Corrections Component" (p.4 BOP PS) seems fully consistent with a "penal or correctional facility," while the "Prerelease Component" (p. 5) may not be. Likewise, some levels of the program at "Comprehensive Sanctions Centers" (p. 5) will clearly satisfy the § 3621(b) requirement, while it may be that some of the later levels may not.
>
> Because the OLC Memo did not employ a textured analysis and confused a judge's sentencing authority under the Sentencing Guidelines with the BOP obligations in carrying out a sentence, those provisions of BOP PS which were rational and statutorily consistent were irrationally abrogated. If there is a legal problem with BOP PS it is not because the BOP was wilfully ignoring the 10% limitation in § 3624(c). Rather, it would arise because some, but not all, components of a prerelease plan might not satisfy the "penal or correctional facility" requirement of § 3621(b). Indeed, a given CCC may or may not be a "penal or correctional facility" depending on the terms and conditions which govern the placement of a specific inmate. Therefore, until further order of this Court, if a particular prerelease CCC placement by the BOP does not satisfy the requirement of custody in a "penal or correctional facility," the 10% limitation in § 3624(c) applies.
>
> Id. at 532, n. 6.

### 3. Undersigned's Conclusion

In analyzing this issue, the undersigned has turned to the canons of statutory construction. The court must first determine "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron U.S.A. v. Natural Res. Def. Council, 467 U.S. 837, 842-43 (1984). Where a statute is unambiguous, the court does not need to decide whether the agency is entitled to deference. United States v. Labonte, 520 U.S. 751, 762 n. 6 (1997). "If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id.

In interpreting a statute, courts do not construe the meaning of statutory terms in a vacuum; instead the words are interpreted "in their context and with a view to their place in the overall statutory scheme." Davis v. Michigan Dept. of Treasury, 489 U.S. 803, 809 (1989); Tyler v. Cain, 533 U.S. 656, 662 (2001). Courts must "give effect, if possible, to every clause and word of a statute." Williams v. Taylor, 529 U.S. 362, 404 (2000)(internal citations omitted). Further, the "specific governs over the general." Varity Corp. v. Howe, 516 U.S. 489, 511 (1996). However, if the language in the statute is not clear, courts may resort to the legislative history to ascertain the meaning of the language. Consumer Product Safety Commission v. GTE Sylvania, Inc., 447 U.S. 102 (1980).

The undersigned finds that a CCC is a place of imprisonment and that the language of §3624(c) is clear and unambiguous. A clear reading of 18 U.S.C. §3624(c) provides certain

discretion to the BOP to assure that a prisoner spends a reasonable part, not to exceed six months, of the last 10 per centum of his sentence, in adjustment and preparation for re-entry into the community which is generally recognized as being placement in a CCC. The essential term is "reasonable part." The language, "not to exceed six months, of the last 10 per centum" defines the parameters of "reasonable part." "Not to exceed six months" clearly indicates that the term spent in CCC cannot be more than six months and could be less than six months. "Of the last 10 per centum" merely defines when placement in a CCC can occur during a sentence. If the last 10 per centum of a sentence is less than six months, it follows that the inmates term in a CCC could not be more and could be less than the last 10 per centum of his sentence. There is nothing in the language of the statute which guarantees an inmate to spending the last six months of his term of imprisonment in CCC. Had Congress intended that interpretation it would have stated it so.

The undersigned further relies on the dissent in Elwood, supra, in finding that the BOP's new policy is not contrary to 18 U.S.C. §§3621(b) and 3624(c). The language of §3624(c) is very specific regarding the amount of time that the BOP can be place a prisoner in a CCC and such language overrides the general discretionary authority provided in §3621(b). Moreover, the current BOP policy corrects an erroneous interpretation of the statute and applies the statute as it is written.

## IV. RECOMMENDATION

Based on the foregoing, the undersigned recommends that the petitioner's §2241 petition DENIED and DISMISSED WITH PREJUDICE.

Any party may file, within ten (10) days after being served with a copy of this Recommendation, with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such

objections should also be submitted to the Honorable Irene M. Keeley, United States District Chief Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner.

DATED: January 10, 2005

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE