**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**PETER J. ESPOSITO, JR.,**

    **Petitioner,**

v.                                       **CIVIL ACTION NO. 1:04CV138
(Judge Keeley)**

**JOHN ASHCROFT, et. al.**

    **Respondents.**

## ORDER DISMISSING PETITION

On June 28, 2004, the pro se petitioner, Peter Esposito, filed a petition pursuant to 28 U.S.C. § 2241, seeking injunctive relief against the Bureau of Prisons ("BOP"). Specifically, Esposito claims that the BOP unlawfully computed his sentence and erroneously calculated his halfway house time. The Court referred the matter to Magistrate Judge John S. Kaull in accordance with Local Rule of Prisoner Litigation 83.09. On January 14, 2005, Magistrate Judge Kaull issued a Report and Recommendation ("the Report"), recommending that the Court dismiss Esposito's petition with prejudice. Esposito filed objections to the Report on January 27, 2005. For the following reasons, the Court **AFFIRMS** the Magistrate's recommendation and **DISMISSES** Esposito's petition.

**ESPOSITO v. ASHCROFT**                                           **1:04CV138**
                        ORDER DISMISSING PETITION

### I. BACKGROUND

In June 2003, Esposito was sentenced in the United States District Court for the Northern District of Ohio to 24 months imprisonment for "improperly licensed/securities tax, charges." He is currently incarcerated in FCI Morgantown, and his projected release date is July 13, 2005.

Esposito first claims that the BOP has erroneously calculated his good conduct time ("GCT") to be 47 days per year instead of 54 days per year. Thus, he argues that the BOP owes him 14 days of GCT. He also asserts that the BOP's new "10% policy" regarding halfway house placement violates the Administrative Procedure Act and the Ex Post Facto Clause of the United States Constitution. He claims that, were the old policy followed, he would receive 6 months in a halfway house, instead of the 2.4 months he is scheduled to receive.

Esposito did not exhaust his administrative remedies on these issues. The Magistrate Judge excused this failure, however, finding that exhaustion was futile.

### II. DISCUSSION

**A.   Good Conduct Time Claim**

Title 18, United States Code, section 3624(b) provides:

> [A] prisoner who is serving a term of imprisonment of more than 1 year[,] other than a term of imprisonment for the duration of the prisoner's life, may receive

> credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations . . . Credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence.

The BOP interprets the phrase "term of imprisonment" to mean the time a defendant actually serves on his sentence, not the full term of incarceration imposed at sentencing. Thus, the BOP generally awards inmates 54 days of GCT for each year actually served and prorates the amount of GCT for the last partial year. This formula recognizes that an inmate's "time actually served becomes incrementally shorter each year as he is awarded GCT." O'Donald v. Johns, 403 F.3d 172, 173 (3rd Cir. 2005) (citing White v. Scibana, 390 F.3d 997, 999-1000 (7th Cir. 2004)); see 28 C.F.R. § 523.20; BOP Program Statement 5880.28, Sentence Computation Manual CCCA.

Esposito maintains that, under a "plain reading" of § 3624(b), a prisoner should earn 54 days for each year of the imposed sentence. The only authority he cites for this position is White v. Scibana, 314 F. Supp. 2d 834 (D. Wisc. 2004); however, the Seventh Circuit recently overruled this decision, holding that § 3624(b) is ambiguous and the BOP's interpretation of the statute is reasonable. White v. Scibana, 390 F.3d 997 (7th Cir. 2004).

Moreover, each circuit court addressing this issue has affirmed the BOP's interpretation of § 3624(b). O'Donald v. Johns, 403 F.3d 172 (3d Cir. 2005); Perez-Olivo v. Chavez, 394 F.3d 45 (1st Cir. 2005); Pacheco-Camacho v. Hood, 272 F.3d 1266 (9th Cir. 2001). The Court finds this authority persuasive and agrees with the Magistrate's recommendation. Thus, the Court concludes that the BOP's calculation of Esposito's GCT was proper.

**B.    Halfway House Placement**

Under 18 U.S.C. § 3624(c),

> [t]he Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

Before 2003, the BOP construed § 3624(c) to allow placement of prisoners in halfway houses or community confinement centers for the last 6 months of their sentence, the length of their sentence notwithstanding. See Elwood v. Jeter, 386 F.3d 842, 844 (8th Cir. 2004). Put another way, the BOP's former interpretation ignored the phrase "of the last 10 per centum of the term to be served." Thus, some inmates with sentences of less than 60 months were

placed in halfway houses for the last 6 months of their sentence. In response to this practice of the BOP, on December 13, 2002, the Department of Justice's Office of Legal Counsel issued a memorandum opinion stating that "[t]he authority conferred under section 3624(c) to transfer a prisoner to a non-prison site is clearly limited to a period 'not to exceed six months, of the last 10 per centum of the time to be served.'" On December 20, 2002, the BOP adopted this opinion and "instituted a policy that inmates could be released to CCCs only for the last ten percent of their terms, to be capped at six months." Elwood, 386 F.3d at 845.

Esposito contends that the BOP's interpretation of § 3624(c) is unlawful insofar as it precludes him from serving the last 6 months of his sentence in a halfway house. He specifically asserts that a "plain reading of the statute" requires the BOP to place him in a community confinement center 6 months prior to his anticipated release.[1] Therefore, the narrow issue before the Court is whether the BOP improperly construed the maximum amount of time that a prisoner can serve in a halfway house before his release under §3624(c).

---

[1] Notably, in his petition and objections, Esposito only challenges the construed 10 percent cap for halfway house placement in § 3624(c). He makes no argument with respect to the BOP's discretion to place him in a halfway house under § 3621(b). Therefore, the Court does not address the interpretation of § 3621(b) in this Order.

### 1. *Legal Standard*

If the intent of Congress is clear on the face of a statute, effect must be given to that intent regardless of the interpretation given to the statute by the agency charged with its enforcement. Chevron U.S.A. Inc. v. Natural Res. Def. Council, 467 U.S. 837, 842-43 (1984). The statute's plain language is paramount in determining congressional intent. See Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 438 (1999). Moreover, if a statute's language is clear and unambiguous, it is unnecessary to consult other aids to statutory construction. Maryland St. Dep't of Educ., Div. of Rehab. Servs. v. United States Dep't of Veterans Affairs, 98 F.3d 165 (4th Cir. 1996).

If a statute is ambiguous, however, legislative rules of an agency are given "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." Chevron, 467 U.S. at 844 (regulation is legislative if "Congress has explicitly left a gap for the agency to fill"). Agency interpretations of statutes that have not been subjected to the rigors of notice and comment rulemaking, however, are not entitled to "Chevron-style" deference, but are "entitled to respect" to the extent that they have the "power to persuade." Cunningham v. Scibana, 259 F.3d 303 (4th Cir. 2001); see Skidmore v. Swift & Co., 323 U.S. 34, 140 (1944). These so-called interpretive rules are given

"'considerable weight,' and should be upheld if they implement the congressional mandate in a reasonable manner." Pelissero v. Thompson, 170 F.3d 442, 446 (4th Cir. 1999).

An interpretive rule "simply states what [the agency] thinks the statute means, and only reminds affected parties of existing duties." Virginia Dep't of Educ. v. Riley, 86 F.3d 1337, 1347 (4th Cir. 1996) (quotation omitted). A legislative rule, by contrast, "intends to create new law, rights or duties [and], [u]nlike interpretive rules [has] the force of law." Id. (quotation omitted).

### 2. Analysis

#### a. The BOP's Interpretation of § 3624(c)

Section 3624(c) is clear and unambiguous. It specifically provides an inmate with the opportunity to spend the last ten percent of his sentence in a transitional facility to help him adjust to re-entry into the community. Under the statute, if ten percent of an inmate's sentence exceeds six months, the inmate can only serve six months in the facility at the end of sentence. Thus, for purposes of § 3624(c), the six month period is an absolute maximum--not a mandatory minimum, as advocated by Esposito. A period of ten percent of the sentence is otherwise the maximum amount of time allowed for pre-release "transitional custody" under § 3624(c). Accordingly, BOP's disputed policy with

respect to section 3624(c) is a lawful interpretation of the maximum amount of pre-release transitional custody. It does not change the law with respect to § 3624(c) and is entirely consistent with the plain meaning of that statute. See Skelskey v. Deboo, 332 F. Supp. 2d 485, 490 (D. Conn. 2004) (holding that the BOP's interpretation of § 3624(c) did not create a new rule of law but merely conformed to the requirements of the statute).

### b.  Challenges to the Statutory Interpretation

In his objections, Esposito argues that, even if the BOP's policy is a valid interpretation of § 3624(c), it nevertheless is unlawful because the public was not given notice and time to comment on the rule before its implementation, as required by the Administrative Procedure Act ("APA"). 5 U.S.C. § 553. He also contends that applying the policy to him violates the Ex Post Facto Clause of the Fifth Amendment, which prohibits Congress from enacting laws that change the punishment or inflict greater punishment for a crime on a person who committed the crime before those laws were enacted. Calder v. Bull, 3 U.S. 386 (1798).

Neither the APA nor the Ex Post Facto Clause applies to interpretative rules. 5 U.S.C. § 553(b)(3); 18 U.S.C. § 3625; Riley, 86 F.3d at 1347 (APA notice and comment provisions apply only to legislative rules, not interpretive rules); United States v. Ellen, 961 F.2d 462, 465 (4th Cir. 1992) (ex post facto clause

only applies to administrative rules promulgated by an agency with statutory authority). As noted earlier, the BOP's policy is not a new rule of law with respect to the halfway house placement calculation in § 3624(c). It is an interpretive policy that accurately states the plain meaning of the statute. Prior to December 20, 2002, the BOP had no duty to place prisoners into halfway houses for a complete six months preceding their release from custody. Thus, the new policy clearly does not violate the APA or Ex Post Facto Clause.

### III. CONCLUSION

Because the BOP's policy is consistent with the plain meaning of 18 U.S.C. § 3624(c) and does not violate the petitioner's rights under the Ex Post Facto Clause of the Fifth Amendment, this Court **AFFIRMS** Magistrate Kaull's recommendation and **DISMISSES** the petition **WITH PREJUDICE** (dkt. no. 1). Wolfe's requests for a preliminary injunction and a temporary restraining order are **DENIED AS MOOT**.

It is so **ORDERED**.

The Clerk is directed to mail a certified copy of this Order to the petitioner and to Magistrate Judge Kaull.

DATED: May ___*12*___, 2005.

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　IRENE M. KEELEY
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE